241 So.2d 277 (1970)
Mary Brigalia LIUZZA, Plaintiff-Appellee,
v.
The HEIRS of NUNZIO and Mary Mussachia Liuzza, Defendants-Appellants.
No. 8099.
Court of Appeal of Louisiana, First Circuit.
November 16, 1970.
*278 Charles Ory Dupont, Plaquemine, William L. Kimball, Port Allen, for appellants.
Jack N. Rogers, Baton Rouge, for appellee.
Before LOTTINGER, SARTAIN and PICKETT, JJ.
SARTAIN, Judge.
The plaintiff-appellee whose deceased husband Joseph was an heir of Nunzio and Mary Mussachia Liuzza instituted this action for a declaratory judgment, praying that her title to two tracts of land near White Castle, Iberville Parish, be decreed valid and merchantable. The defendants-appellants answered asserting at least a partial undivided interest acquired by them through inheritance. The trial judge found for the plaintiff and we affirm.
*279 The subject property was acquired in two transactions by Nunzio and Mary Mussachia Liuzza. The first sale occurred in 1895 and the second in 1898. There is no dispute over the validity of these sales, except as to whether or not Mrs. Liuzza acquired the land as separate property. Following an action by creditors against the Liuzzas for a debt of their community, it was judicially declared on October 27, 1899, that the property belonged to the community and was thus subject to seizure. Defendants-appellants rely particularly on this judgment to prove that the property thereafter remained community in nature notwithstanding an alleged sale and repurchase pursuant to a right of redemption clause. However, on February 15, 1900, the property was sold to George G. Adams. The act of sale contained a right of redemption providing that the vendee was bound to reconvey the property if the vendor paid him the sum of $358.00 on or before February 15, 1901. The remainder of the clause reads as follows:
"but in the case that the said vendor, or her heirs or assigns, fail to make the said payment within the said period, then, the said property shall be and remain the absolute property of the said vendee, and the said vendor and her heirs and assigns shall have no right, title, claim, interest or demand therein or thereto."
The property was not sold by George Adams to Mrs. Liuzza until December 26, 1908, long after the expiration of the right of redemption. Whatever effect a repurchase pursuant to an existing right of redemption might have had on the continuing community nature of the property, that question is not a factor in this case. La. Civil Code Arts. 2569, 2570. In the same way, the effect of the judgment of October 27, 1899, declaring the property to be community in nature is no longer relevant.
The characterization of the property must, then, begin with the sale from George Adams to Mrs. Liuzza in 1908. And it is from this point in time that the claims of the parties must be resolved. The defendants are heirs of Nunzio and Mary Mussachia Liuzza. They allege that the subject property belonged to the community so that when Nunzio died in 1918, his heirs were seised with possession of his one-half undivided interest in the property, although his succession has never been opened and disposed of judicially and Mary Mussachia Liuzza continued to possess the property until her death in 1933. Her succession was opened and Joseph Liuzza, a son of her marriage to Nunzio and husband of the plaintiff in this case, was appointed administrator and the court appointed a curator ad hoc as attorney for absent heirs. After finding that the succession was insolvent, the court ordered the administrative sale of the only asset, the subject property in this case, for the purpose of paying as many debts and costs as possible. The entire property was adjudicated to one Joseph Crucia in an administrative sale on January 21, 1941, for $450.00 and on September 10, 1941, Joseph Liuzza purchased the same property from Crucia for $500.00. Thereafter, Joseph Liuzza and his wife possessed the property.
On or about December 2, 1964, Joseph Liuzza granted to one Roger Barlow an option to purchase the property. On January 23, 1965, the option was extended for six months under an authentic act. Following an application by Barlow for a loan from the Bank of Commerce in White Castle, the bank's attorney performed a title examination and expressed the opinion that the title of Joseph Liuzza was not merchantable because of the possible community nature of the property when it was acquired in 1908, the inheritance rights of the heirs of Nunzio Liuzza arising from his death in 1918 and the possible invalidity of the administrative sale in 1941 and the subsequent purchase in that year by Joseph Liuzza. The bank refused to rely on possible prescription to cure these apparent defects.
Upon discovering that the advertisement of the 1941 administrative sale was defective, *280 in that the notice was published in Orleans Parish where the succession was opened but not in Iberville Parish where the property was situated, Joseph Liuzza instituted a monition proceeding in Iberville Parish. After the necessary advertising and delays, and when no opposition had been made, judgment was rendered on June 15, 1965, confirming and homologating the administrative sale and making the title of Joseph Liuzza, the subsequent purchaser, perfect and complete.
Joseph Liuzza died on March 6, 1966, and on May 14, 1966, his widow was sent into possession of his entire estate, including the subject property, under a judgment of possession in his succession. On November 22, 1967, she instituted this action for a declaratory judgment relative to her ownership rights in the property. From a judgment in her favor and against the defendant heirs declaring her to be the full owner with a valid and merchantable title to the subject property, defendants have taken this appeal.
The sole basis for the claim of ownership by the defendants is the characterization of the property as the community property of Nunzio and Mary Mussachia Liuzza and their subsequent inheritance of his one-half undivided interest therein when he died in 1918.
In the act of sale from George Adams in 1908, the vendee was described as follows:
"Mrs. Mary Mesachea the wife of lawful age of Nunzio Liuzza, herein duly authorized by her said husband and herein investing her own separate paraphernal funds, the control and management of which she reverses"
The recited consideration for the sale was $600.00, of which $200.00 was paid in cash and for the balance of which Mrs. Liuzza furnished two promissory notes in the amount of $200.00 each.
Louisiana Civil Code Art. 2402 establishes the presumption that all property acquired under onerous title during the existence of the marital community falls into that community, even though the acquisition may be in the name of only one of the spouses. Cameron v. Rowland, 215 La. 177, 40 So.2d 1 (1949); Johnson v. Johnson, 213 La. 1092, 36 So.2d 396 (1948).
In the situation where the wife has purchased property in her own name, she may rebut the presumption by proving that she invested or reinvested separate funds to acquire property for her separate estate. Southwest Natural Prod. Co. v. Anderson, 239 La. 490, 118 So.2d 897 (1960); Succession of Schnitter, 220 La. 323, 56 So.2d 563 (1952). If the purchase is a credit transaction the wife must show that she has sufficient separate funds to make it reasonable for her to expect to be able to meet the deferred payments. See Succession of Franek, 224 La. 747, 70 So.2d 670 (1954). It is clear that burden of proof devolves upon the wife in these respects and that, notwithstanding a recital in the act of sale that the purchase was for the benefit of the wife's separate estate and was made with her separate funds under her administration, clear and positive evidence of the existence and sufficiency of such funds is required to overcome the presumption. Cameron v. Rowland, supra. In the case at bar, there is nothing in the record which proves that Mrs. Mary Mussachia Liuzza ever had or maintained any separate funds. Therefore, the presumption must prevail that the subject property purchased in her name did fall into the marital community and a one-half undivided interest therein passed to the heirs of Nunzio Liuzza at his death in 1918.
However, plaintiff alleges that the heirs were divested of their one-half undivided interest by means of the administrative sale in January of 1941, the purchase by Joseph Liuzza in September of 1941 and continuous, unopposed, good faith possession by him and his wife since that time.
The defendants allege that the administrative sale to Joseph Crucia was null *281 because the court was without authority to sell the entire property, which included their one-half interest, that this knowledge was imputable to Joseph Liuzza as both a coheir and co-owner and that his subsequent purchase was thus in bad faith.
A purchaser of property who buys from one honestly believed to be the owner will not be charged with bad faith merely because examination of records at the time of the purchase would have disclosed a defect in the vendor's title. La. Civil Code Art. 3451; Bruce v. Cheramie, 231 La. 881, 93 So.2d 202 (1957); Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943). Moreover, a purchaser at an administrative sale is not bound to look beyond the order of sale made by a court having jurisdiction of the succession. La.Civil Code Art. 2623; Key v. Salley, 218 La. 922, 51 So.2d 390 (1951). Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor must prove it. La. Civil Code Art. 3481; Haas v. Dezauche, 214 La. 259, 37 So.2d 441 (1948).
The trial court found that the defendants did not prove bad faith on the part of Joseph Crucia. We find nothing in the record to indicate that the court was in error in that finding. We therefore affirm that Joseph Crucia was a purchaser in good faith and acquired sufficient title to commence the running of the good faith prescription of ten years under La.Civil Code Art. 3474.
Defendants contend, however, that because Joseph Liuzza was in bad faith in his purchase from Crucia, he could not have tacked or joined his possession to that of Crucia in order to acquire by means of good faith prescription.
The answer to this contention rests on the consistent interpretation by the Louisiana Supreme Court of Articles 3493 and 3482 of the Civil Code.
Article 3493 reads as follows:
"The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by a universal or particular, a lucrative or an onerous title."
Article 3482 reads as follows:
"It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription."
In the very early case of Devall v. Choppin, 15 La. 566 (1840) the Supreme Court enunciated the proposition that if a successor showed that one of his authors was a possessor in good faith and had all the necessary ingredients for ten year prescription, he could acquire by such prescription even though he as well as an intermediate author possessed in bad faith. This interpretation has become the rule in our jurisprudence. Liquidators of Prudential Savings and Homestead Soc. v. Langermann, 156 La. 76, 100 So. 55 (1924). See Brewster v. Hewes, 113 La. 45, 36 So. 883 (1904); Wheat v. Bear and Thayer Hardwood Co. Inc., 15 La.App. 306, 131 So. 307 (1930); Vance v. Ellerbe, 150 La. 388, 90 So. 735 (1922). For criticism of this interpretation, see VIII La.Law Rev. 111.
Under this rule, it does not matter whether Joseph Liuzza, or his widow after him, was in good faith or bad faith. He was able to take advantage of his author's good faith acquisition and possession to sustain a finding of ten year good faith acquisitive prescription in the same way as if Crucia had held the property himself for ten years.
There appears from the record ample evidence of continuous possession as owners by Joseph Liuzza and his wife. It is argued that a co-owner in possession is presumed to hold property for the other co-owners and that in order to possess for himself alone the possession must be open *282 and hostile, with notice given to the other co-owners. We think that Mr. Justice McCaleb, in his concurring opinion in Succession of Seals, 243 La. 1056, 150 So. 2d 13, at 22, correctly observed that possession under a recorded deed translative of title for which valuable consideration has been paid is sufficient to rebut any such legal presumption.
Accordingly, for the above and foregoing reasons, the judgment of the district court is affirmed at appellants' cost.
Affirmed.