TUCKER, Judge.
The plaintiff, Clarence C. Packwood, brought this suit against the defendants, Mack B. Johnson, Jimmie Steptoe, Mertdell Sanders, Booker T. Chatman and Rite-Way House Movers, Inc., seeking to rescind a contract of sale to him from Mack B. Johnson, which sale covered all the issued shares of stock in the corporate de fendant. The plaintiff also alleged that he was entitled to recover the down payment on the sale, legal fees and the installments he paid on the promissory note, representing the credit balance on the purchase price in the total sum of Eight Thousand, One Hundred Fifteen ($8,115.00) Dollars.
The defendant, Mack B. Johnson, answered the suit, specifically denying that the sale should be rescinded, and he reconvened against the plaintiff for the remaining unpaid balance on the purchase price promissory note in the sum of Twelve Thousand, Five Hundred Fifty-Four and 13/100 ($12,554.13) Dollars with interest and attorney fees.
The trial court rendered and signed a judgment dismissing plaintiff’s main demand, and granted judgment in favor of the defendant and plaintiff in reconvention, Mack B. Johnson, and against the plaintiff and defendant in reconvention in the sum of $12,554.13 with interest at the rate of 8% per annum from date until paid and 25% on the amount of both principal and interest as attorney fees. The plaintiff was cast with all costs of court. From this judgment the plaintiff has appealed.
Plaintiff’s appeal is based essentially on the proposition that at the time of the execution of the sale to him of the Rite-Way corporate shares on May 20, 1969 that there was pending against the corporation a claim for workmen’s compensation, which fact was not disclosed to plaintiff by the seller, Mack B. Johnson; that the failure on the part of Johnson to disclose the existence of this claim amounted to fraud and created an error of fact in the confection of the contract which justified a rescission of the agreement.
The errors with which the trial court is charged by the plaintiff in reaching its decision are as follows:
“1. The trial court erred to the extent it found the plaintiff had knowledge of the existence of the claim for workmen’s compensation benefits prior to the execution of the act of sale on May 20, 1969.
2. The court erred in finding that the claim for workmen’s compensation benefits could have been settled for $2,000.00 in February of 1970.
3. The court erred in finding that the error of fact as to plaintiff’s knowledge of the existence of claim was not of such significance as to warrant recision of the contract.
4. The court erred in seemingly imputing the knowledge of co-defendant, Booker T. Chatman, to the plaintiff, C. C. Packwood.
5. The court erred in failing to find that Nathan E. Wilson was, in substance if not form, the attorney and agent for Riteway House Movers, Inc. at the time of the execution of the act of sale.”
The facts here are relatively undisputed. The sale of the shares of stock in house moving business of Rite-Way was made *665 for the price and sum of $20,000.00, of which sum $5,000.00 was paid in cash by Packwood, and the balance of the price in the amount of $15,000.00 was represented by a promissory note of $15,000.00, payable in monthly installments and secured by a chattel mortgage covering the trucks, other equipment and machinery, constituting the assets of the corporation. The evidence shows that Johnson was interested in selling the Rite-Way corporation; that he had an offer from another individual to purchase the corporation, but told Booker T. Chatman, one of the defendants herein, who had worked for Johnson some two years, that should he be interested in buying this house moving business, he would give Chatman the first option of purchase. Chatman contacted the plaintiff with reference to the purchase. Chatman and Packwood were cousins. The plaintiff was not experienced in the house moving business, and, according to Chatman, the plaintiff relied on Chatman’s knowledge in regard to the value of the business, and in light of Chatman’s experience as a foreman who was in a position to take care of the daily operations, and the plaintiff’s superiority education-wise and in the field of business, a deal was made between them that Packwood and Chatman would buy the corporation and be “fifty-fifty” partners in the business of the concern. The parties concede that the identity of all the outstanding debts, obligations and assets of Rite-Way were revealed to the plaintiff, but plaintiff avers he was not informed and had no knowledge of the workmen’s compensation claim of Isaac Chatman which later became the subject of a suit. We do not believe that the record supports Packwood’s disclaimer of knowledge with respect to the compensation claim. Certainly Booker T. Chatman knew Isaac Chatman had been injured accidentally on the job, and that this worker had received workmen’s compensation payments from Rite-Way until about six months before the sale was executed. It was not until after the sale was consummated that suit was filed on behalf of Isaac Chatman seeking workmen’s compensation for total and permanent disability. Booker T. Chatman could not recall having told plaintiff about Isaac Chatman’s claim as he did not think it was important. However, it appears that plaintiff had some knowledge of this claim on which suit had not been filed at the time the sales contract was executed. (Tr. 62 and 63). Plaintiff testified that Booker T. Chatman had not told him about the claim until shortly after the agreement was signed because Chatman “thought it was all over.”
The sales contract contains a paragraph which notes that the books and records of the corporation were delivered to the plaintiff on May 12, 1969, eight days before the contract was signed. It is not necessary for a resolution of the case that we make a definite finding that the plaintiff examined the books and records, but we do specifically hold that he had a reasonable opportunity to inspect the books and records, and a cursory examination by him would have disclosed plainly that Rite-Way had paid workmen’s compensation to the claimant. We think the entire record amply supports the trial judge’s statement contained his oral reasons for judgment to the effect that neither of the parties were actually concerned “about the outstanding workmen’s compensation claim at the time the sale was passed.”
Plaintiff places stress on the past attorney-client relationship between Nathan E. Wilson who often had represented Johnson and Rite-Way in legal matters. The record simply does not support any chicanery on this score. The plaintiff testified positively that he considered Mr. Wilson to be' his lawyer in the subject transaction, and the record shows that he paid this attorney’s fee. There is no suggestion in the record that any artifice or design was used by Johnson in order to entrap the plaintiff into using the legal services of Mr. Wilson. As a matter of fact the evidence is to the contrary, and Packwood, along with his partner, Booker T. Chatman, were free to select an attorney of their choice. In this *666 connection we note that Mr. Wilson was not made a party defendant to this suit, and, neither was he called as a witness.
The allegation of fraud is a most serious charge and the courts of this state accordingly have required strong and conclusive proof, and it must be established by proof stronger than a mere preponderance of the evidence. See Fitch v. Broussard, 156 So.2d 127 (La.App. 3d Cir. 1963). Charge of fraud is a most serious charge and one who alleges fraud has burden of establishing it by legal and convincing evidence. Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953) and Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1953). A charge of fraud is a most serious one, and fraud is never to be imputed to anyone except upon legal evidence, and evidence must be strong and convincing, not merely probable or of suspicious nature. Collier v. Administrator, Succession of Blevins, 136 So.2d 774 (La.App. 4th Cir. 1962).
The case of La Croix v. Recknagel, 230 La. 842, 89 So.2d 363 (1956) cited in defendant Johnson’s brief is authority for the proposition that in order for a misrepresentation to vitiate a contract of sale and prevent its enforcement by a court of equity, it must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party had no knowledge and did not possess the means of acquiring knowledge * * *. The La Croix case referred to the holding in Rocchi v. Schwabacher, 33 La.Ann. 1364 which approved the language of the United State’s Supreme Court in Slaughter’s Administration v. Gerson, 13 Wall. 379, 20 L.Ed. 627, as follows: “ ‘Where the means of knowledge are at hand and equally available to both parties and the subject of purchase is alike open to inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor’s misrepresentation.’ ”
Applying these accepted principles of law to the facts of the instant case, the evidence woefully fails to establish fraud on the part of Johnson in his dealings with Packwood, and we are unable to perceive any evidence pointing to deceit being practiced on the plaintiff so that he would be induced to enter into the sales contract. For the moment accepting plaintiff’s premise that his lack of knowledge of the pending and unliquidated workmen’s compensation claim was material to his willingness to enter into the contract, the record is replete with proof that plaintiff was afforded every reasonable opportunity to become informed about the claim. His failure to apprise himself of this long standing claim can be laid at no other doorstep except his own.
We are in substantial accord with the principles of the cases cited in plaintiff’s brief, but under the particular facts of this case, the cited decisions give the plaintiff no surcease.
In view of our reasoning Error No. 2 advanced by plaintiff has no bearing on the outcome of this litigation. As to Error No. 4 asserted by plaintiff, we think the trial judge would not have been remiss in imputing the knowledge of plaintiff’s cousin and partner, Booker T. Chatman, to the plaintiff, but the decision of the trial court does not suggest this to have been the case. On the other hand, there was ample evi-dentiary basis for our finding that plaintiff either had independent knowledge of the pending workmen’s compensation claim, or, at least, had reasonable means of learning about the existence of such claim. We find no merit in plaintiff’s assertions that the trial court committed manifest error in reaching its decision.
For the above and foregoing reasons the judgment of the trial court in rejecting plaintiff’s main demand, and in granting judgment in favor of the defendant as plaintiff in reconvention is affirmed at plaintiff’s costs.
Affirmed.